IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CRAIG NELSON, et al.,

    Plaintiffs,

v.

CHEMSPEC USA, INC.,

    Defendant.

No. 1:11-cv-03060-PA

**ORDER**

---

CHEMSPEC USA, INC.,

    Third-Party Plaintiff,

v.

SMOOTH FINISHES, LLC, et al.,

    Third-Party Defendants.

**PANNER, J.**

    Plaintiffs Craig Nelson and RM Custom Boats, Inc. (Rogue Marine), an aluminum boat manufacturer, bring claims for negligence against defendant ChemSpec USA, Inc. (ChemSpec), which makes paint, primer, and finishes. Rogue Marine claims ChemSpec is responsible for the failure of ChemSpec's epoxy

1 - ORDER

primer and gloss coating on 73 of Rogue Marine's boats. ChemSpec brings a third-party claim against the independent paint distributor, Smooth Finishes, LLC, and its owner, Jadd Horban (Horban), who sold ChemSpec's products to Rogue Marine.

ChemSpec moves for summary judgment. I have carefully reviewed the summary judgment briefs and exhibits, as well as the parties' trial documents, including the exhibits, witness statements, and trial briefs. I conclude Rogue Marine has failed to show any disputed issues of material fact. I grant ChemSpec's motion for summary judgment, and strike the previously scheduled pretrial conference and trial.

## BACKGROUND

Rogue Marine began purchasing ChemSpec's Montana Big Sky epoxy primer and polygloss clear coat from Horban in April 2007. ChemSpec's products are designed for automobiles, and its warranty specifically excludes use on boats.

With the initial shipment, Horban provided Rogue Marine with ChemSpec's product information sheets for the epoxy primer and polygloss coat. The information sheets described the proper application process for the products.

Gregory Frank, then Rogue Marine's only painter, received the product information sheets and reviewed them before using the paint on Rogue Marine's boats. Frank did not follow the instructions in three crucial ways.

First, he "baked" the epoxy primer in a booth at 160 degrees Fahrenheit for 30 minutes, although the instructions required that the primer be allowed to dry at 75 degrees for 30 to 60 minutes. Baking the primer to a hard finish could

2 - ORDER

prevent the next layer from adhering properly.

Second, Frank applied a thin coat of Zolatone, a laquer product not manufactured by ChemSpec, although the instructions stated that polygloss was not be applied over a laquer product. Frank was aware that Zolatone was a laquer product. Laquer products used this way act as a solvent.

Third, Frank applied only a thin, speckled coat of Zolatone to the interior of the boats. This allowed the polygloss coat to be in direct contact with the epoxy primer. The product information sheets for the primer and polygloss coat list compatible top coats and base coats. Neither product information sheet approves the use of the polygloss coat directly over the epoxy primer. It is undisputed that when Rogue Marine painted boats' exteriors with a pigmented base coat between the epoxy primer and the polygloss coat, rather than the spotty layer of Zolatone, there were no paint failures.

In summer 2009, customers began returning boats to Rogue Marine because the interior paint was flaking and peeling off. As of now, 73 boats have been returned. Fourteen of the boats were repainted twice after the initial repainting using Frank's flawed methods failed.

## STANDARDS

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, then the nonmoving party must go

Case 1:11-cv-03060-PA   Document 76   Filed 05/25/12   Page 3 of 6

prevent the next layer from adhering properly.

Second, Frank applied a thin coat of Zolatone, a laquer product not manufactured by ChemSpec, although the instructions stated that polygloss was not be applied over a laquer product. Frank was aware that Zolatone was a laquer product. Laquer products used this way act as a solvent.

Third, Frank applied only a thin, speckled coat of Zolatone to the interior of the boats. This allowed the polygloss coat to be in direct contact with the epoxy primer. The product information sheets for the primer and polygloss coat list compatible top coats and base coats. Neither product information sheet approves the use of the polygloss coat directly over the epoxy primer. It is undisputed that when Rogue Marine painted boats' exteriors with a pigmented base coat between the epoxy primer and the polygloss coat, rather than the spotty layer of Zolatone, there were no paint failures.

In summer 2009, customers began returning boats to Rogue Marine because the interior paint was flaking and peeling off. As of now, 73 boats have been returned. Fourteen of the boats were repainted twice after the initial repainting using Frank's flawed methods failed.

## STANDARDS

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, then the nonmoving party must go

beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

## DISCUSSION

### I. Rogue Marine's Claim for Negligent Instruction

Judge Stewart summarized Oregon law on negligence claims based on a manufacturer's alleged failure to warn:

> In short, a warning should give fair and adequate notice of the possible consequences of or dangers involved in the product's use or misuse. Schmeiser v. Trus Joist, 273 Or. 120, 131-32, 540 P.2d 998, 1004 (1975). Additionally, warnings can be adequate even when ignored:

> Where a proper warning is given, as by instructions on the product's container, the manufacturer or seller is normally not liable on the ground of negligence for product-caused injury when the warning or instructions are disregarded, and where it appears that the injury would not have occurred had they been observed.

Safeco Ins. Co. of Am. v. Olstedt Constr., Inc., 2004 WL 1050877, at *6 (D. Or. 2004) (quoting Schmeiser, 273 Or. at 132, 540 P.2d at 1004), adopted, 2004 WL 3103945 (D. Or. July 14, 2004)

Here, it is undisputed that Rogue Marine violated ChemSpec's instructions, and "the injury would not have occurred had they been observed." Id. The remaining issue is whether ChemSpec knew or should have known that Rogue Marine was applying its products improperly, yet failed to warn Rogue

4 - ORDER

Marine. I conclude Rogue Marine has not submitted evidence from which a reasonable jury could find ChemSpec approved or even was aware of Frank's flawed application process. Both Craig Nelson, Rogue Marine's current owner, and Matthew Morris, the previous owner, stated that they never spoke to any ChemSpec employee about the application process. Similarly, Jadd Horban, the independent distributor, did not see the entire paint process, and did not know that Rogue Marine was baking the primer rather than letting it dry.

ChemSpec had previously advised Horban that using Zolatone would void the warranty because ChemSpec's products were not to be used with another manufacturer's products. ChemSpec also told Horban that baking the epoxy primer would cause problems with adhesion. Any knowledge Horban may have had cannot be imputed to ChemSpec because it is undisputed that Horban was an independent contractor, not an employee or agent. See Schaff v. Ray's Land & Sea Food Co., 334 Or. 94, 99-100, 45 P.3d 936, 939 (2002) ("Whether an individual is an employee or an independent contractor is a legal conclusion. That conclusion, however, depends on a factual determination of the extent to which the purported employer has the right to control the performance of services by the individual."). There is no evidence that Horban told ChemSpec about Rogue Marine's improper application procedure after the initial sale occurred.

Because no reasonable jury could find that the failure of ChemSpec's products was caused by ChemSpec's negligent instructions, ChemSpec is entitled to summary judgment on this claim.

5 - ORDER

## II. Rogue Marine's Claims for Negigent Design and Manufacture

It is undisputed that Rogue Marine did not follow ChemSpec's product information sheets when it applied the epoxy primer and polygloss clear coating to the interior of its boats. It is also undisputed that "Rogue Marine has not experienced any failures of ChemSpec's paint products on the exterior of [its] boats, where Rogue Marine applied the epoxy primer, a pigmented basecoat, and then the polygloss clear." Proposed Pretrial Order ¶ 15. In other words, when Rogue Marine used ChemSpec's products properly, they did not fail. Rogue Marine has not presented evidence from which any reasonable jury could find that ChemSpec's products were negligently designed or manufactured.

## CONCLUSION

Defendant's motion for summary judgment (#29) is granted.

IT IS SO ORDERED.

DATED this __25__ day of May, 2012.

_____
OWEN M. PANNER
U.S. DISTRICT JUDGE

6 - ORDER